FILED
CLERK

10/26/2015 2:18 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SHA-KING D. VEREEN, #15000108,

                        Plaintiff,

      -against-

NY STATE, NASSAU CTY., HEMPSTEAD
POLICE DEPT., NASSAU CTY. POLICE DEPT.,

                       Defendants.
------------------------------------------------------------------X

MEMORANDUM AND ORDER
15-CV-3655 (SJF)(AYS)

FEUERSTEIN, District Judge:

I.     Introduction

On June 22, 2015, incarcerated *pro se* plaintiff Sha-King D. Vereen ("plaintiff") filed a complaint in this Court pursuant to 42 U.S.C. § 1983 ("Section 1983") against New York State ("the State"), Nassau County ("the County"), the Hempstead Police Department ("HPD") and the Nassau County Police Department ("NCPD") (collectively, "defendants"), accompanied by an application to proceed *in forma pauperis*. On July 22, 2015, plaintiff filed an application for the appointment of *pro bono* counsel to represent him in this case.

Since plaintiff's financial status, as set forth in his declaration in support of the application to proceed *in forma pauperis*, qualifies him to commence this action without prepayment of the filing fee, *see* 28 U.S.C. §§ 1914(a); 1915(a)(1), plaintiff's request to proceed *in forma pauperis* is granted. However, for the reasons set forth below, the complaint is *sua sponte* dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii)-(iii) and 1915A(b) and the application for the appointment of *pro bono* counsel is denied.

II.     Background[1]

Plaintiff alleges that on January 6, 2015, "police officers" and "detectives" (collectively, "the police") went to his girlfriend's home and told him that "there was an investigation going on and they felt that [he] was part of th[e] investigation." (Compl. at 6). According to plaintiff, although he "listened and [] complied" with the police and told them that he "had no knowledge of any crime that had taken place," (*id.* at 6-7), they took him to the Hempstead Armory, where he was questioned and shown pictures of two (2) individuals, one of whom he knew. (*Id.* at 6-7). According to plaintiff, the police never told him that he "was being place[d] under arrest or anything else." (*Id.*)

Plaintiff alleges that the police also showed him "another set of pictures" and asked him if he knew the person depicted therein, to which he responded, "yes I do." (Compl. at 7). The police then advised plaintiff that the individual in the picture reported that plaintiff "had beat him up." (*Id.*) According to plaintiff, he told the police that the individual in the picture had borrowed money from him and then had called him "to come over and pick the money up[,]" (*id.*), but when he arrived at the designated place, the individual told him that he did not have the money and that his girlfriend was bringing it. (*Id.*) Plaintiff alleges that he "sat for a while and [the girlfriend] never came but she kept callin[g] but never showed up." (*Id.*) Eventually, the individual in the picture "just gave up on his girlfriend and told [plaintiff] that [he] had to leave[,]" (*id.*), but plaintiff responded that he "didn't have any money to go anywhere[.]" (*Id.*)

---

[1] All material allegations in the complaint are assumed to be true for the purpose of this Order, *see*, *e.g.*, *Rogers v. City of Troy, N.Y.*, 148 F.3d 52, 58 (2d Cir. 1998) (in reviewing a *pro se* complaint for *sua sponte* dismissal, a court is required to accept the material allegations in the complaint as true), and do not constitute findings of fact by the Court.

According to plaintiff, the individual "got mad and tried to snatch [him] up and throw [him] out the door[,]" (*id.*), and, while plaintiff was just talking to him, the individual "swang [sic] on [him]," so he defended himself. (*Id.*) Plaintiff alleges:

> "[t]here was no robbery at all [the individual in the picture] told me to come over and pick up my $250.00 but when i [sic] arrived he told me to wait because his girlfriend was coming back but never showed up. He tried to manhandle me instead of politely asking me if i [sic] could come back but he didn't he swung i [sic] defended myself."

(*Id.*)

Plaintiff alleges that the police then arrested him and "accused [him] of 18 charges from assault to robbery on both case's [sic]." (Compl. at 8.) According to plaintiff, (1) all of the charges are fabricated by the HPD and NCPD, (*id.*); (2) his indictment by the grand jury "[i]n the case of the robbery and assault in the 2nd degree" violated his due process rights because (a) he was never told that he was being arrested, (b) the police never read him his Miranda rights, and (c) his attorney waived his right to testify before the grand jury without his consent, (*id.* at 8-9); and (3) his due process rights were violated in "[t]he case with [his] codefendant [sic]" because (a) his co-defendant was identified in both a photo array and a video, but plaintiff was not identified in either the array or the video, nor where his fingerprints found on anything; (b) his co-defendant made a written statement implicating himself, *i.e.*, "that he [the co-defendant] had a plastic gun that he threw away," (c) he is "being accused for something someone else did that [he] had nothing to do with[,]" (d) "[t]here is no evidence of [him] even being there but there is evidence of [his] codefendant [sic] being there," (e) his girlfriend gave a written statement providing him with an alibi, and (f) "Martin Hayward [] lied to the police and [plaintiff] was arrested for it." (*Id.* at 9).

3

Plaintiff seeks his "freedom" and damages in the amount of five hundred thousand dollars ($500,000.00). (*Id.* ¶ V, and Supplement to the Complaint [Docket Entry No. 5]).

III.  Discussion

   A.  Standard of Review

Under both the Prison Litigation Reform Act, 28 U.S.C. § 1915A, and the *in forma pauperis* statute, 28 U.S.C. § 1915(e)(2), a district court must dismiss a complaint if it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant with immunity. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (finding both Section 1915 and Section 1915A to be applicable to a prisoner proceeding *in forma pauperis*).

It is axiomatic that district courts are required to read *pro se* complaints liberally, *see Gerstenbluth v. Credit Suisse Sec. (USA) LLC*, 728 F.3d 139, 142-43 (2d Cir. 2013), and to construe them "to raise the strongest arguments that they suggest." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) (quotations and citations omitted). Moreover, at the pleadings stage of the proceeding, the Court must assume "all well-pleaded, nonconclusory factual allegations in the complaint to be true." *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010), *aff'd*, — U.S. —, 133 S. Ct. 1659, 185 L. Ed. 2d 671 (2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009)); *see also Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 171, 125 S. Ct. 1497, 161 L. Ed. 2d 361 (2005).

Nevertheless, a complaint must plead sufficient facts to "state a claim to relief that is

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). While the plausibility standard "does not require detailed factual allegations," it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. 1937).

B. Section 1983

Section 1983 of Title 42 of the United States Code provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."

42 U.S.C. § 1983. "Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." *Filarsky v. Delia*, --- U.S. ----, 132 S. Ct. 1657, 1661, 182 L. Ed. 2d 662 (2012). To state a claim under § 1983, a plaintiff must allege: (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (citation omitted); *see also Rehberg v. Paulk*, --- U.S. ----, 132 S. Ct. 1497, 1501-02, 182 L. Ed. 2d 593 (2012).

1. Claims against the State

"A foundational premise of the federal system is that States, as sovereigns, are immune from suits for damages, save as they elect to waive that defense." *Coleman v. Court of Appeals of Maryland*, --- U.S. ----, 132 S. Ct. 1327, 1333, 182 L. Ed. 2d 296 (2012). Absent consent, the Eleventh Amendment to the United States Constitution bars suits in federal court by private parties against a State. *See Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144, 113 S. Ct. 684, 121 L. Ed. 2d 605 (1993) ("Absent waiver, neither a State nor agencies acting under its control may be subject to suit in federal court." (quotations and citation omitted)); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984) ("[I]n the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). "Sovereign immunity principles enforce an important constitutional limitation on the power of the federal courts." *Sossamon v. Texas*, 536 U.S. 277, ----, 131 S. Ct. 1651, 1657, 179 L. Ed. 2d 700 (2011); *see also Pennhurst State*, 465 U.S. at 98, 104 S. Ct. 900 ("[T]he principle of sovereign immunity is a constitutional limitation on the federal judicial power established in Art. III[.]")

A State's consent to suit must be "unequivocally expressed," *Pennhurst State*, 465 U.S. at 99, 104 S. Ct. 900, and "may not be implied." *Sossamon*, 563 U.S. at ----, 131 S. Ct. at 1658. "Generally, [courts] will find a waiver either if the State voluntarily invokes [federal court] jurisdiction . . . , or else if the State makes a clear declaration that it intends to submit itself to [federal court] jurisdiction . . . ." *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675-76, 119 S. Ct. 2219, 144 L. Ed. 2d 605 (1999) (quotations and citations omitted).

Moreover, "[a]s an exception to this principle [of Eleventh Amendment sovereign immunity], Congress may abrogate the States' immunity from suit pursuant to its powers under § 5 of the Fourteenth Amendment." *Coleman*, --- U.S. ----, 132 S. Ct. 1327, 1333; *see also United States v. Georgia*, 546 U.S. 151, 154, 158-59, 126 S. Ct. 877, 163 L. Ed. 2d 650 (2006). "Congress must make its intention to abrogate unmistakably clear in the language of the statute." *Coleman*, --- U.S. ----, 132 S.Ct. at 1333 (quotations, brackets and citation omitted).

Although the Eleventh Amendment generally does not bar suits against state officials acting in their official capacity seeking prospective relief, *i.e.*, to enjoin conduct that violates the federal Constitution, *see Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 2d 714 (1908); *Conyers v. Rossides*, 558 F.3d 137, 150 (2d Cir. 2009), that exception to Eleventh Amendment immunity is inapplicable to suits against the States, which are barred, absent consent to suit or congressional abrogation of immunity, regardless of the relief sought. *See Puerto Rico Aqueduct*, 506 U.S. at 146; *Pennhurst State*, 465 U.S. at 100-01 (holding that the Eleventh Amendment's "jurisdictional bar applies [to claims against the State] regardless of the nature of the relief sought.").

It is well established both that Section 1983 does not constitute an exercise of Congress's authority to abrogate States' sovereign immunity, *Dube v. State Univ. of New York*, 900 F.2d 587, 594 (2d Cir. 1990); *see also Quern v. Jordan*, 440 U.S. 332, 342, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979) (holding that Section 1983 did not abrogate the State's Eleventh Amendment immunity), and that the State has not waived its sovereign immunity from Section 1983 claims. *See Trotman v. Palisades Interstate Park Commission*, 557 F.2d 35, 39-40 (2d Cir. 1977); *Gross v. New York*, 428 F. App'x 52, 53 (2d Cir. June 27, 2011) (summary order). Accordingly,

7

plaintiff's claims against the State are *sua sponte* dismissed in their entirety with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2) as barred by the Eleventh Amendment.

### 2. Claims against the HPD and NCPD

"'Under New York law, departments which are merely administrative arms of a municipality, do not have a legal identity separate and apart from the municipality and cannot sue or be sued.'" *Burbar v. Incorporated Village of Garden City*, 961 F. Supp. 2d 462, 471 (E.D.N.Y. 2013) (quoting *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002)); *see also Robischung-Walsh v. Nassau County Police Dep't*, 699 F. Supp. 2d 563, 565 (E.D.N.Y. 2010), *aff'd*, 421 F. App'x 38 (2d Cir. 2011). Since the NCPD and the HPD (collectively, "the Police Departments") are administrative arms of the County of Nassau and the Incorporated Village of Hempstead ("the Village"), respectively, they lack the capacity to be sued. *See, e.g. Rose v. County of Nassau*, 904 F. Supp. 2d 244, 247 (E.D.N.Y. 2012) (dismissing claims against the NCPD because it is a non-suable entity); *Miller v. Nassau County District Attorney's Office*, No. 09-cv-2819, 2009 WL 5218606, at * 3 (E.D.N.Y. Dec. 28, 2009) (dismissing claims against the HPD because it lacked the capacity to be sued). Accordingly, plaintiff's claims against the Police Departments are dismissed in their entirety with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim for relief. However, since plaintiff is proceeding *pro se,* his Section 1983 claims against the HPD will be construed as being brought against the Village.

3. Claims against the County and Village

"[A] municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012), *cert. denied*, 134 S. Ct. 125, 187 L. Ed. 2d 255 (2013); *accord Matusick v. Erie Co. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a *respondeat superior* basis for the tort of its employee." *Jones*, 691 F.3d at 80; *see also Connick v. Thompson*, 563 U.S. 51, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011) (holding that under Section 1983, governmental bodies are not vicariously liable for their employees' actions); *Los Angeles County, Cal. v. Humphries*, 562 U.S. 29, 131 S. Ct. 447, 452, 178 L. Ed. 2d 460 (2010) ("[A] municipality cannot be held liable solely for the acts of others, e.g.*, solely* because it employs a tortfeasor." (emphasis in original) (quotations and citation omitted)); *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). To prevail on a Section 1983 claim against a municipal entity, a plaintiff must show: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008); *see also Connick*, 563 U.S. 51, 131 S. Ct. at 1359 ("Plaintiffs who seek to impose liability on local governments under Section 1983 must prove that 'action pursuant to official municipal policy' caused their injury." (quoting *Monell*, 436 U.S. at 691, 98 S. Ct. 2018)); *Humphries*, 562 U.S. 29, 131 S. Ct. at 452 ("[A] municipality may be held liable when execution of a government's *policy or custom* . . . inflicts the injury." (emphasis in original) (quotations and citation omitted)).

"A municipal policy may be pronounced or tacit and reflected in either action or inaction." *Cash v. County of Erie*, 654 F.3d 324, 333 (2d Cir. 2011). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. 51, 131 S.Ct. at 1359. In addition, municipal liability can be established "by showing that a policymaking official ordered or ratified the employee's actions - either expressly or tacitly." *Jones*, 691 F.3d at 81. "Thus, a plaintiff can prevail against a municipality by showing that the policymaking official was aware of the employee's unconstitutional actions and consciously chose to ignore them." *Id.* To establish such deliberate indifference, "a plaintiff must show that a policymaking official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action to prevent or sanction violations of constitutional rights." *Id.* "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action[,]" *Connick*, 563 U.S. 51, 131 S. Ct. at 1360 (quotations and citation omitted), and "requires a showing that the official made a conscious choice, and was not merely negligent." *Jones*, 691 F.3d at 81; *see also Cash*, 654 F.3d at 334.

To state a claim for municipal liability under Section 1983, a plaintiff must allege more than that a municipal policy or custom exists. *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) ("[T]he mere assertion that a municipality has * * * a custom or policy is insufficient [to withstand dismissal] in the absence of allegations of fact tending to support, at least circumstantially, such an inference * * *." (quotations, alterations and citation omitted)); accord *Zherka v. City of New York*, 459 F. App'x 10, 12 (2d Cir. Jan. 19, 2012) (summary order).

10

"Rather, a plaintiff must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012); *accord Triano v. Town of Harrison, N.Y.*, 895 F. Supp. 2d 526, 535 (S.D.N.Y. 2012).

The complaint is devoid of any factual allegations from which it may reasonably be inferred that a municipal policy or custom caused the conduct of which plaintiff complains. Plaintiff has not alleged, *inter alia*: (1) the existence of a formal policy which was officially endorsed by the County, Village, or Police Departments ; (2) actions taken or decisions made by policymaking officials of the County, Village or Police Departments which caused the alleged violations of his civil rights; (3) a practice of the County, Village or Police Departments so persistent and widespread as to practically have the force of law; or (4) a failure by policymakers of the County, Village or Police Departments to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with their employees. Since the complaint fails to state a plausible Section 1983 claim against the County and Village, plaintiff's Section 1983 claims against the County, and as construed to be against the Village, are dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim for relief, **unless on or before December 7, 2015**, plaintiff files an amended complaint re-pleading his Section 1983 claims seeking damages against the County and Village to correct the deficiencies set forth herein.[2] *See Grullon v. City of*

---

[2] Insofar as plaintiff seeks to secure his "freedom" in this case, such relief is unavailable in a civil action pursuant to Section 1983. *See generally Muhammad v. Close*, 540 U.S. 749, 750, 124 S. Ct. 1303, 158 L. Ed. 2d 32 (2004) ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus * * *"); *Preiser v. Rodriguez*, 411 U.S. 475, 490, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973) (holding that habeas relief

*New Haven*, 720 F.3d 133, 139-40 (2d Cir. 2013) ("A *pro se* complaint should not be dismissed without * * * granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." (quotations, brackets and citation omitted)).

C.   Application for the Appointment of *Pro Bono* Counsel

28 U.S.C. § 1915(e)(1) provides that a "court may request an attorney to represent any person unable to afford counsel." Courts possess substantial discretion to determine whether appointment of counsel for civil litigants is appropriate, *Ferrelli v. River Manor Health Care Center*, 323 F.3d 196, 203 (2d Cir. 2003), "subject to the requirement that [they] be 'guided by sound legal principle.'" *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 171-72 (2d Cir. 1989) (quoting *Jenkins v. Chemical Bank*, 721 F.2d 876, 879 (2d Cir. 1983)).

When deciding whether to appoint counsel to an indigent civil litigant under §1915(e)(1), the threshold inquiry is whether there is "some likelihood of merit" to the litigant's position. *Smith v. Fischer*, — F.3d —, 2015 WL 5780510, at * 2 (2d Cir. Oct. 5, 2015); *see also Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001) ("[C]ounsel should not be appointed in a case where the merits of the indigent's claim are thin and his chance of prevailing are therefore poor."); *see also Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986) (stating that "the district judge should first determine whether that indigent's position seems likely to be of substance").

If the threshold showing has been met, the court should next consider the following

---

is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release from custody). The exclusive avenue for such relief is via a petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

prudential factors:

> [T]he indigent's ability to investigate the crucial facts, whether
> conflicting evidence implicating the need for cross-examination
> will be the major proof presented to the fact finder, the indigent's
> ability to present the case, the complexity of the legal issues and
> any special reason in that case why appointment of counsel would
> be more likely to lead to a just determination.

*Hodge*, 802 F.2d at 61-62; *see also Johnston v. Maha*, 606 F.3d 39, 43 (2d Cir. 2010) (applying the *Hodge* factors); *Carmona*, 243 F.3d at 632 (holding that "[o]nly after an initial finding that a claim is likely one of substance, will we consider secondary factors such as the factual and legal complexity of the case, the ability of the litigant to navigate the legal minefield unassisted, and any other reason why in the particular case appointment of counsel would more probably lead to a just resolution of the dispute"). However, those factors are not exclusive and "[e]ach case must be decided on its own facts." *Hodge*, 802 F.2d at 61.

The appointment of *pro bono* counsel is not warranted at this stage of the litigation since, for the reasons set forth above, there is no merit to any of plaintiff's claims as alleged in the complaint. Moreover, the legal issues presented in this case are not particularly complex; plaintiff appears capable of preparing and presenting his case and investigating the crucial facts; and there is no special reason to appoint counsel at this time. Accordingly, plaintiff's application for the appointment of counsel is denied without prejudice to renewal when this case is trial ready. In the interim, plaintiff must either retain counsel or proceed *pro se*.

IV.     Conclusion

For the reasons set forth above, plaintiff's application to proceed *in forma pauperis* is

granted; plaintiff's claims against the Police Departments are *sua sponte* dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim for relief; plaintiff's claims against the State are *sua sponte* dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2) as barred by the Eleventh Amendment; plaintiff's claims against the County, and as construed to be against the Village, are dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim for relief, **unless plaintiff files an amended complaint in accordance with this Order on or before December 7, 2015**; and plaintiff's motion for the appointment of counsel is denied. Pursuant to Rule 77(d)(1) of the Federal Rules of Civil Procedure, the Clerk of the Court shall serve notice of entry of this Order upon plaintiff as provided in Rule 5(b) of the Federal Rules of Civil Procedure and record such service on the docket.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

SO ORDERED.

                                                                             /s/
                                      Sandra J. Feuerstein
                                      United States District Judge

Dated:       October 26, 2015
              Central Islip, New York